**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIO CESAR FLORES SANTANA,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, ET AL.,<br>Respondents. | Case No. 5:26-cv-04997-MAR<br>**ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On August 31, 2026, Petitioner **Julio Cesar Flores Santana (A# 096-321-071)** ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). On September 9, 2026, Respondents filed an Answer to the Petition. Dkt. 7, ("Answer"). The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 9. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## 4II.

## FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of Mexico who was ordered removed in 2021. Pet. at 15–17. Notwithstanding his final order of removal, Petitioner was not taken into custody. Id. Petitioner remained physically at liberty in California for five years. Petitioner has no criminal history between 2010 and 2026. Id. at 24. On August 6, 2026, Petitioner was arrested via a "targeted enforcement operation." Id. at 20. Petitioner was not provided notice or an opportunity to be heard prior to his arrest.

Respondents present a form I-205 as authorizing Petitioner's arrest. Dkt. 7-5 at 1. The I-205 is signed by an "SDDO," which refers to a Supervisory Detention and Deportation Officer. Id. The form I-213 indicates that the purpose of Petitioner's detention was to execute his removal. See Dkt. 7-1.

On August 12, 2026, the Ninth Circuit entered an order providing a temporary stay of Petitioner's removal. Pet. at 26. On August 27, 2026, Petitioner's request for custody determination was denied for lack of jurisdiction. Id. at 27.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that Respondents had no authority to arrest Petitioner without a valid I-205 arrest warrant because Section 1357(a)(2) authorizes warrantless civil immigration arrests only where the officer has reason to believe the person is unlawfully present and is "likely to escape before a warrant can be obtained" and the record contains no supporting facts that the warrantless arrest exception applies. Pet. at 46–49. Petitioner's second and third claims for relief are based on the

---

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so unless noted herein. Dkt. 8. Therefore, the Court considers the following undisputed facts to be and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

violation of his Fifth Amendment Right to Due Process. Id. at 49–54.

Petitioner seeks immediate release from custody and an order enjoining Respondents from re-detaining him unless Respondents possess lawful statutory arrest authority and provide any pre-deprivation process required by the Constitution. Id. at 64. Respondents argue that Petitioner's detention is not unreasonable or defective, that Petitioner must exhaust administrative remedies, and that the Court cannot prevent Petitioner's removal. Answer at 4–9.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates

procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken,

4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, in the context of a habeas petition, the administrative exhaustion requirement is prudential, not mandatory or jurisdictional. See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies."). As such, the exhaustion requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted).

This Court concludes that Petitioner has satisfied his burden to show that he will suffer irreparable harm every day that he remains in custody based on an unlawful arrest. See, e.g., Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025) ("[R]equiring Petitioner to be subjected to unlawful detention pending the BIA's decision would cause irreparable harm,"); Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025) (same). Further, even if the BIA were to ultimately reverse the IJ's decision denying bond, it could not afford Petitioner an adequate administrative remedy for his prolonged detention in the interim. "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings." Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation modified).

It is undisputed that Petitioner has resided in the United States, subject to a final order of removal, for over five years. It is further undisputed that Petitioner has no criminal history during that time, and that his previous convictions arose over sixteen years prior to his detention. Based on these undisputed facts, the Court concludes that

Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States, the ties he built to the community over the past five years, and the fact that the government affirmatively chose not to detain Petitioner when he was ordered removed. See Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); see, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (same); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest without a pre-deprivation hearing violated Petitioner's procedural due process rights.[2] See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any

---

2 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is high because there has been no determination of Petitioner's danger or flight risk and because Petitioner was arrested without the service of a valid warrant or showing of exigent circumstances. Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given the violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." [3] Id.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this

---

3 The Court also notes that several courts in this district have found that a warrantless arrest without any showing of circumstances that Petitioner is "likely to escape before a warrant can be obtained" is an independent basis for release. See ALBERTO PERDOMO RIVERA, Petitioner, v. MARKWAYNE MULLIN, et al., Respondents. Additional Party Names: Dep't of Homeland Sec., Immigr. & Customs Enf't, No. 5:26-CV-04197-KES, 2026 WL 2276935 (C.D. Cal. Aug. 6, 2026); Petrashkevich v. Mullin, No. 5:26-CV-04223-PD, 2026 WL 2337897 (C.D. Cal. Aug. 12, 2026). Here, Petitioner argues that, although Petitioner was allegedly served with an I-205 warrant, the warrant was signed by an "SDDO." The regulation governing I-205s enumerates a list of immigration officials authorized to issue them. 8 C.F.R. § 241.2(a); see Ger V. v. Mullin, No. 26-CV-2543 (KMM/DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026). "[T]he SDDO position is simply not enumerated in the list of authorized officials per § 241.2(a). The fact that the SDDO position is expressly authorized to issue I-200 warrants, see 8 C.F.R. § 287.5(e)(2)(xxxii), confirms their omission from the I-205 list." Id. The record does not support that the SDDO was validly delegated the authority necessary to sign this I-205. See id.; 8 C.F.R. § 241.2(a)(xxxii). Therefore, even assuming that the warrant was issued before Petitioner's arrest, which the record also does not reflect, Petitioner was not arrested pursuant to a validly issued I-205 warrant of removal and there is no indication that Petitioner was "likely to escape before a warrant [could] be obtained."

court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a

habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).[5]

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA. The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Julio Cesar Flores Santana (A# 096-321-071)** ("Petitioner") from custody (subject only to conditions that were in place prior to his detention, if any) and return any confiscated property and documents to

---

4 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

5 In granting the Petition and limited injunction, the Court does not vacate Petitioner's final order of removal or stay his removal. Indeed, the Ninth Circuit has already stayed Petitioner's removal. Respondents' invocation of 8 U.S.C. § 1252(g) is inapposite.

Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance for removal and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance within twenty-four hours.

IT IS SO ORDERED.

DATED: November 9, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE